**25-6494**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

AMMAR HARRIS,
Plaintiff-Appellee,

v.

JOSHUA BOYD,
Defendant-Appellant,

and

ELY STATE PRISON STAFF; et al.,
Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:21-cv-00380-CLB

---

# DEFENDANT-APPELLANT'S REPLY BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendant-Appellant*
*Joshua Boyd*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iv

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 6

A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Officer Boyd's Motion for Summary Judgment Asserting Qualified Immunity .......... 6

B. Harris Admits Officer Boyd Is Entitled to Qualified Immunity When an Offender Fails to Establish a Violation of a Clearly Established Law, Beyond Debate .......... 10

C. Officer Boyd Is Entitled to Qualified Immunity Because He Did *NOT* Violate the Eighth Amendment Based on a Failure to Protect .......... 12

1. Harris Failed to Establish that Officer Boyd Personally Participated in Any Conduct which Supposedly Violated the Eighth Amendment .......... 13

2. Harris Cannot Establish an Eighth Amendment Violation Because the Officers Acted Reasonably .......... 18

D. Officer Boyd Is Entitled to Qualified Immunity Because Harris Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law .......... 24

E. Despite Harris's Insinuations, Officer Boyd Did *NOT* Waive Any Arguments on Appeal .......... 30

III. CONCLUSION .......... 32

CERTIFICATE OF COMPLIANCE .......... 33

CERTIFICATE OF SERVICE .......... 34

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Corr. Corp. of Am.*, 681 Fed. Appx. 579, 2017 WL 971815 (9th Cir. 2017) ........ 17

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022) ........ 30

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 13

*Bartley v. Kim's Enter. of Orlando, Inc.*, Case No. 13–13507, 568 Fed. Appx. 827 (11th Cir. 2014) ........ 31

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ........ 6

*Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) ........ 16

*Bryan v. Las Vegas Metro. Police Dept.*, 349 Fed. Appx. 132, 2009 WL 3249742 (9th Cir. 2009) ........ 17

*Cardenas-Ornelas v. Johnson*, 165 F.4th 1234 (9th Cir. 2026) ........ 22

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) ........ 9, 29

*Case v. Beasley*, 167 F.4th 651 (4th Cir. 2026) ........ 27, 28

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ........ 26

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ........ 30

*Cortez v. Skol*, 776 F.3d 1046 (9th Cir. 2015) ........ 26

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ........ 24

*Dale v. Poston*, 548 F.3d 563 (7th Cir. 2008) ........ 20

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ................................27

*Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022).......9

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002)...........8

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............. 5, 12, 15, 16, 18, 19, 29

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) .....................7

*Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005) ................................28

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...............................................26, 27

*Hopson v. Alexander*, 71 F.4th 692 (9th Cir. 2023) ..................................8

*In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154 (2d Cir. 2012) ......................................................................................31

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)..................................................................................................31

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) .........................................7

*Johnson v. Jones*, 515 U.S. 304 (1995)......................................................7

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002).....................................17

*Kisela v. Hughes*, 584 U.S. 100 (2018) ...................................................27

*Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155 (9th Cir. 2013)...............16

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988).......................................13

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) ....................22

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) ................................21, 23

*Medical Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713 (6th Cir. 2019)....................................................................31

*Palmer v. Vasquez*, 696 Fed. Appx. 782, 2017 WL 2547295 (9th Cir. 2017) ........ 17

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ........ 7

*Reichle v. Howards*, 566 U.S. 658 (2012) ........ 10, 11

*Scott v. Harris*, 550 U.S. 372 (2007) ........ 1, 7, 8, 9

*Scroggins v. Davis*, 346 Fed. Appx. 504, 2009 WL 3069645 (11th Cir. 2009) ........ 23

*Smith v. Agdeppa*, 81 F.4th 994 (9th Cir. 2023) ........ 32

*Strizich v. Batista*, Case No. 18-36008, 2022 WL 823587 (9th Cir. Mar. 18, 2022) ........ 16

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ........ 21

*Walls v. Tadman*, 762 F.3d 778 (8th Cir. 2014) ........ 20

*West v. City of Caldwell*, 931 F.3d 978 (9th Cir. 2019) ........ 27

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ........ 8, 22

*Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024) ........ 7

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App’x 670 (9th Cir. 2007) ........ 16

## RULES

9th Cir. R. 32-1 ........ 33

Fed. R. App. P. 32 ........ 33

## I. INTRODUCTION

Contrary to the United States Supreme Court's express mandate in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), Harris asks this Court to credit his false and speculative version of the facts which "is blatantly contradicted" by the video recording of his attack on another offender when his cell door opened. Video evidence establishes that, less than one second after Harris instigated an attack on another offender, and while he was still inside his cell, Harris's cell door was closed so Harris would be protected inside his cell. Video 2, TI 1:32-38; Video 5.[1] Video evidence further establishes that, rather than remain inside the safety of his cell, where he would have been fully protected, Harris forced and squeezed through his cell door before it was fully closed so that he could continue the attack he instigated. Video 2, TI 1:32-38; Video 5. Any

[1] Defendant-Appellant moved to transmit the video recordings, which were manually filed with the district court as Exhibit C to Defendants' motion for summary judgment. These records include videos of Unit 1A Short Side Tier (Video 1), Unit 1A Long Side Tier (Video 2), Unit 1A Center Tier (Video 3), and Unit 1A Pan-Tilt-Zoom, PTZ (Video 4). For the Court's convenience, Video 5 is a clip from Video 2, which is zoomed using Lightworks, a publicly available, free, video editing software found at https://lwks.com/. Accordingly, contrary to Harris's argument (Answering Brief at 5 n.1), Video 5 was before the district court because it is simply a zoomed in clip of Video 2. The district court had the same capability to zoom the video. Even without software, the district court could have achieved the same effect by simply watching the video using the court's projection equipment to watch the video on a projection screen.

harm Harris suffered was due to his intentional misconduct and refusal to stay in the safety of his cell, not because Officer Boyd acted unreasonably or failed to protect Harris.

Moreover, Harris's claim that Offender Righetti, who Harris attacked, carried a hook-style weapon in his hand (Answering Brief at 5), is also "blatantly contradicted" by the video. The video clearly shows no weapon was in either Righetti's left hand (Video 2, TI 1:02-33; Video 5, TI, 0:01-03), or Righetti's right hand (Video 2, TI 1:02-03, 1:38-40; Video 5, TI, 0:09-10).

Likewise, Harris's claim that Righetti made a signal for officers to open Harris's cell door (Answering Brief at 5) is "blatantly contradicted" by the video.[2] The video establishes that no such signal was made. Video 2, TI 1:02-33; Video 5. To the extent that Harris argues Righetti merely looking left over his shoulder is some sort of signal (Answering Brief at 5, citing Video 2, TI 1:24-30), that argument is nothing more than wild and desperate speculation which cannot defeat a motion for summary judgment.

---

[2] Harris also misrepresents that his cell "door remained closed long after every nearby prisoner's door had opened." Answering Brief at 5. The video establishes that cell doors were progressively being opened and that cells A14, A16 and A24 had not yet been opened when Harris's cell door was opened. Video 2, TI 0:50-1:34.

Harris's claim that he "felt the door pinning or impaling him as he engaged Righetti" is "blatantly contradicted" by the video. Answering Brief at 6 citing 2-ER-86 ¶ 5 ("Cole and Boyd tried to impale me with the door") and 2-ER-88 ¶ 23 ("I rushed my body towards [the door], that's when Cole and Boyd tried to pin me in the door"). Instead, the video establishes Harris was fully inside his cell when the door began to close, and only just before the door closed, which would have provided absolute safety, Harris intentionally moved forward to force and squeeze through his cell door before it was fully closed so that he could continue his attack that he instigated. Video 2, TI 1:28-39; Video 5.

Finally, Harris's claim that he saw Officers Boyd and Cole laugh and smile at the incident (Answering Brief at 5), or that he heard Officers Boyd and Cole cheering for Righetti (Answering Brief at 6), is also "blatantly contradicted" by the videos. Due to the position of the control bubble, where Officers Boyd and Cole were stationed, and because the control bubble is enclosed by glass windows and protected by bars, which partially blocks the view into the control bubble, no jury could believe that Harris heard, saw or could distinguish anything inside the control bubble from the small, narrow window slit in his cell door. Video 4, TI 0:00 – 2:40; *see also* Video 2, TI 1:02-33; Video 5. In the fifteen (15) seconds between when Harris's cell doors began to open and when he exited his cell, he was not even looking in the direction of

the control bubble, but was looking at Offender Righetti where he was focusing his attack. Video 2, TI 1:22-38; Video 5.

Additionally, Harris fails to point to any evidence establishing Officer Boyd was personally aware of any animosity between Harris and Righetti, the offender Harris attacked. Harris does point to an allegation in his declaration where "he told ***one*** prison guard on duty that morning—either Boyd, Officer Cole, ***or*** another officer--that Harris would not be going to the prison yard." Answering Brief at 4 (emphasis added) citing 2-ER-85, ¶ 1 ("Approximately 8am that morning Cole, Boyd or Hally asked if I were attending yard while 37-48 on tier, replied no, not my group"). Harris, however, ignores that in his verified complaint, he declared under oath that at "8am ***Cole*** asked Harris if he were attending yard, which was declined." 3-ER-352, ¶ 24. Accordingly, Harris affirmed under oath that the "one" officer was Office Cole, ***not*** Officer Boyd. Even if Officer Boyd had been informed that Harris did not want to go out to the yard, Harris never indicated that he did not want to go out in the yard due to any danger, but because it was "not my group." 2-ER-85, ¶ 1. Further, even if Harris did not want to go to the yard, that does not mean that he also did not want his cell door open, as he may have wanted to be on the tier. Officer Boyd therefore had no reason to suspect that Harris faced any danger from opening his cell door, especially when Harris never

indicated that he did not want his cell door open, much less that he was in any danger from an open cell door. Officer Boyd therefore was completely unaware of any risk of harm that might befall Harris as a result of opening Harris's cell door.

Even if Officer Boyd had suspected that Harris might possibly be harmed by opening his cell door, which would be insufficient to establish an Eighth Amendment violation, Harris admits under oath that Officer Cole, ***not*** Officer Boyd, was the officer operating the door controls. 3-ER-352, ¶ 24 ("Approx. 8:30am Cole started opening multiple doors in the Death Row unit"). Harris points to no facts establishing that Officer Boyd even knew the officer operating the door controls had opened Harris's cell door, much less point to facts showing that Officer Boyd had any input in the decision to open Harris's cell door.

Without evidence that Officer Boyd personally and actually was aware of an objective, intolerable, substantial risk of serious harm and that Officer Boyd was actually and personally involved in some conduct which placed Harris at risk of any harm, as required by *Farmer v. Brennan*, 511 U.S. 825, 837-38, 842, 846-47 (1994), Harris cannot establish an Eighth Amendment violation. Harris also cannot establish Officer Boyd violated the Eighth Amendment violation because officers acted reasonably, as set forth in *Farmer*, 511 U.S. at 844-45, by

immediately closing Harris's cell door in less that one second after Harris instigated the attack, which would have fully protected Harris had he simply remained in his cell. Video 2, TI 1:32-38; Video 5.

As Harris failed to establish an Eighth Amendment violation, much less a violation of clearly established law beyond debate, Officer Boyd is shielded by qualified immunity. Accordingly, the district court erred when it denied Officer Boyd's motion for summary judgment asserting qualified immunity. This Court should therefore reverse the district court's order denying Officer Boyd's motion, and remand with instructions to grant the motion because Officer Boyd is entitled to qualified immunity.

## II. ARGUMENT

### A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Officer Boyd's Motion for Summary Judgment Asserting Qualified Immunity

Harris wrongly argues this Court lacks jurisdiction simply because the district court wrongly determined there was a disputed issue of fact. Answering Brief at 14-20. In *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996), the Supreme Court expressly held the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact," but "surely does not mean that every such denial of summary judgment is nonappealable." As an

example, the Supreme Court in *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014),[3] recognized, in *Scott*, 550 U.S. at 380-81, the Court had no doubts about jurisdiction, even though the plaintiff's version of the facts told "quite a different story," when the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment," even though both the district and appellate court found a genuine dispute of material facts. Contrary to Harris's inuendo, the Supreme Court in *Plumhoff* held "deciding legal issues of this sort is a core responsibility of appellate courts."[4] 572 U.S. at 773.

---

[3] Harris's reliance on *Johnson v. Jones*, 515 U.S. 304 (1995) (Answering Brief at 13-14, 17) is unsupportable in light of the Supreme Court's subsequent decisions in *Plumhoff*. *Johnson* never held that this Court lacks jurisdiction to independently review the record to determine whether any material evidence in the record establishes that each defendant personally participated in a constitutional violation. Instead, *Johnson* unremarkably held where material admissible evidence in the record could establish that all five defendant officers had "beaten the inmate," the appellate court lacked jurisdiction to consider a dispute of material fact by three of the officers that they were not present at the time of the alleged beating. 515 U.S. at 307-08, 313-17; *see also Plumhoff*, 572 U.S. at 772-73.

[4] This Court has repeatedly held: "While appellate review does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact, ***<u>any issue of law</u>*** . . . is a permissible subject for appellate review." *Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024) (emphasis added); *see also Hart v. City of Redwood City*, 99 F.4th 543, 548 (9th Cir. 2024) (same); *Jeffers v. Gomez*, 267 F.3d 895, 904 (9th Cir. 2001) (same).

Just as in *Scott*, Harris's version of the facts "is blatantly contradicted" by the video recording of the incident, "so that no reasonable jury could believe it," and therefore Harris's version does not create a genuine dispute of material fact, necessary to defeat summary judgment. *Scott*, 550 U.S. at 380-81. Similarly, in *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010), this Court held a "review [of] a denial of qualified immunity [is] de novo," and therefore "when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [this Court] need not rely on those facts for purposes of ruling on the summary judgment motion" asserting qualified immunity.[5] Accordingly, this Court has jurisdiction to decide the legal issue of whether the district court erred when determining that Harris created a genuine issue of material fact precluding summary judgment.

---

[5] In *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1048 (9th Cir. 2002), this Court held it has jurisdiction to "decide whether there is a material dispute about the correctional officers' conduct," even though the district court "concluded that genuine issues of material fact exist[ed]." Also, in *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023), this Court held it "decide[s] de novo whether the facts, considered in the light most favorable to the plaintiff, show that qualified immunity is warranted" and therefore has jurisdiction to "consider facts offered by the defendant that are uncontradicted by any evidence in the record."

Moreover, in *Carley v. Aranas*, 103 F.4th 653, 658-59 (9th Cir. 2024), this Court expressly held even when the "district court conclude[s] that there is still a genuine dispute of material fact," this Court has jurisdiction to determine "whether the defendant would be entitled to qualified immunity as a matter of law," after "assuming all factual dispute are resolved, and all reasonable inferences are drawn, in plaintiff's favor." As held by this Court in *Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022), even if Appellants' "appellate briefing arguably lapsed into disputing plaintiffs' version," this Court still "'undoubtedly' ha[s] jurisdiction to consider the district court's denial of qualified immunity." This Court reasoned Appellants "defense-friendly presentation of the facts does not deprive us of jurisdiction" because this Court "is fully capable of distinguishing between advocacy and the record itself." *Id.*

As the Supreme Court expressly held in *Scott*, at "the summary judgment stage, . . . once [an appellate court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record," then whether an officer's actions have risen to a violation of the Constitution "is a pure question of law." 550 U.S. at 381 n.8. This Court should therefore independently review the record, including the video, determine which facts were undisputed, construe the disputed material facts that are

uncontroverted by the video in favor of Harris, and determine whether Harris met his burden of proof establishing that Officer Boyd personally violated clearly established law beyond debate. Because Harris failed to do so, this Court should reverse district court's denial of Officer Boyd's motion for summary judgment as he is shielded by qualified immunity as a matter of law.

### B. Harris Admits Officer Boyd Is Entitled to Qualified Immunity When an Offender Fails to Establish a Violation of a Clearly Established Law, Beyond Debate

Harris admits Officer Boyd is shielded by qualified immunity when he failed to meet the burden of showing: "(1) that the [Officer Boyd] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," as set forth in *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). *See* Answering Brief, at 11. Along with that concession, Harris fails to point to any material facts, established by actual evidence in the record that is uncontroverted by the video, or existing precedent, showing that Officer Boyd's own personal and knowing actions violated a right "beyond debate" so that every "reasonable official would have understood that what he is doing violates that right." *Reichle v. Reeds*, 566 U.S. 658, 664-65 (2012).

As recognized by Harris (Answering Brief at 38), in *Zorn*, the Supreme Court recently reaffirmed this exacting standard: "To find that a right is clearly established," required to overcome qualified immunity, courts "need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." 146 S. Ct. at 930. "The relevant precedent must define the right with a ***high degree of specificity***, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (emphasis added). Officials "receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Id.*

Contrary to *Zorn*'s mandate, Harris fails to point to any binding Supreme Court or circuit precedent which established, under the specific facts of this case, as set forth in the video and Harris's verified complaint, that Officer Boyd personally violated a constitutional right. Of course, Harris's failure is unsurprising as no such case exists. Thus, Harris merely cites general principles, without looking at the underlying factual circumstances of each case. Such an approach does not establish a constitutional violation "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665. Accordingly, Harris cannot show a violation of

a right, much less a clearly established right required to overcome qualified immunity.

### C. Officer Boyd Is Entitled to Qualified Immunity Because He Did ***NOT*** Violate the Eighth Amendment Based on a Failure to Protect

Harris admits (Answering Brief at 24) that to establish an Eighth Amendment violation based on a failure to protect, under *Farmer,* he must point to evidence, uncontradicted by the video, that Officer Boyd "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." 511 U.S. at 835. Even if Harris could show that Officer Boyd "fail[ed] to alleviate a significant risk that he should have perceived but did not," that does not establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 838. Moreover, Officer Boyd did not disregard an excess risk and therefore "cannot be found liable under the Cruel and Unusual Punishments Clause" because prison officials "act[ed] reasonably" even though "the harm ultimately was not averted." 511 U.S. at 844-45.

Here, Harris failed to establish a violation of the Eighth Amendment under this standard mandated by *Farmer*. Officer Boyd therefore is shielded by qualified immunity. Accordingly, this Court should reverse the district court and remand with instructions to grant Officer Boyd's motion for summary judgment.

#### 1. Harris Failed to Establish that Officer Boyd Personally Participated in Any Conduct which Supposedly Violated the Eighth Amendment

Harris failed to establish that Officer Boyd personally knew about any risk of harm to Harris or had any involvement in the decision to open Harris's cell door, which allowed Harris to attack the offender standing outside his door. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding "each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (holding a "person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains").

Harris fails to point to any evidence establishing Officer Boyd was personally aware of any animosity between Harris and Righetti, the offender Harris attacked. Harris declared under oath that he told Officer Cole, ***not*** Officer Boyd, that he did not want to attend yard.[6] 3-

---

[6] Harris ignores that the district court properly ruled that Harris's subsequent sham declaration that he told Cole, Boyd or Harry that he would not be going to the yard was insufficient to establish that Officer Boyd specifically knew this information. 1-ER-7:16-18, 27-28 & n.5. This is especially true because Harris admitted in his complaint that

ER-352. Even if Officer Boyd had been informed that Harris did not want to go out to the yard, Harris never indicated that he did not want to go out in the yard due to any danger, but because it was "not my group." 2-ER-85, ¶ 1. Even if Harris had told Officer Boyd that he did not want to go to the yard that did not also indicate that he did not want his cell door open, as he may have wanted to be on the tier. Officer Boyd therefore had no reason to suspect that Harris faced any danger from opening his cell door, especially when Harris never indicated that he did not want his cell door open, much less that he was in any danger from an open cell door. Officer Boyd therefore was completely unaware of any risk of harm that might befall Harris as a result of opening Harris's cell door.

Harris seems to imply that Officer Boyd should have known that Harris was at risk because Offender Righetti, who Harris attacked, carried a hook-style weapon in his hand. Answering Brief at 1, 5, 9, 17, 24. Harris, however, ignores the video establishing that no weapon was in either Righetti's left hand (Video 2, TI 1:02-33; Video 5, TI, 0:01-03), or Righetti's right hand (Video 2, TI 1:02-03, 1:38-40; Video 5, TI, 0:09-

---

Officer Cole was the person with whom he had this conversation. 3-ER-352.

10). Even without the video, Harris points to no evidence record establishing that Officer Boyd saw a weapon in Righetti's hand.[7]

Accordingly, Officer Boyd had no reason to suspect, much less personally know that Harris faced any risk to his safety which is required to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 838, 842 (***rejecting*** the argument allowing "a prison official who was unaware of a substantial risk of harm to an inmate [to] nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it" and holding an "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment").

At most, Harris has established that Officer Boyd might have seen Offender Righetti standing outside Harris's cell. Video 2, TI 1:03-33. Of course, given that it was tier and yard time, nothing about Righetti standing outside of Harris's cell would be a reason for concern. Accordingly, nothing about that situation establishes actual personal

---

[7] If Harris' statements weren't blatantly contradicted by the video – which they are – the allegation is further called into serious question because it defies reason to believe that Harris would have made the decision to force himself out of the safety of his cell to continue the attack he instigated if he actually knew his victim had a weapon. The video, however, blatantly contradicts what would otherwise defy logic.

knowledge of a "substantial risk of serious harm" because there is "no record of any threats or problems" between Harris and Righetti. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160-61 (9th Cir. 2013); *see also Strizich v. Batista*, Case No. 18-36008, 2022 WL 823587, at *2 (9th Cir. Mar. 18, 2022) (holding even though "rival gang members may have posed a potential risk" to the plaintiff inmate, his Eighth Amendment failure to protect claim was properly dismissed because the plaintiff inmate "did not make assertions from which a reasonable person could objectively infer that any named Defendant was aware that [the plaintiff inmate] was at a substantial risk of serious harm on the date of the assault"). Because Harris never asserted that he faced any risk from any other offender, he cannot establish that Officer Boyd was personally aware that Harris faced an "intolerable," "substantial risk of serious harm" required to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 846-47; *see also Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm"); *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015) (holding "the mere possibility [of harm] is not enough" to establish an Eighth Amendment violation because the plaintiff must establish "a strong likelihood of serious harm").

Moreover, Harris affirmed under oath in his verified complaint that Officer Cole, ***not*** Officer Boyd, opened Harris's cell door. 3-ER-352; *see also* 3-ER-271. Harris does not point to any evidence showing Officer Boyd even knew that Officer Cole had opened Harris's cell door, much less point to evidence establishing Officer Boyd had any input in the decision to open Harris's cell door. Officer Boyd cannot be held "liable for an alleged constitutional violation merely for being present at the scene of an alleged unlawful act" because "either integral participation or personal involvement [is] required." *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002).[8]

Here, Harris improperly wants to hold Officer Boyd liable merely because he was present in the control bubble when Officer Cole opened

---

[8] *See also Palmer v. Vasquez*, 696 Fed. Appx. 782, 784, 2017 WL 2547295 (9th Cir. 2017) (holding "no Defendant [was] liable for th[e] decision" to house two inmates together when "none of the Defendants was responsible" for the decision); A*dkins v. Corr. Corp. of Am.*, 681 Fed. Appx. 579, 581, 2017 WL 971815 (9th Cir. 2017) (holding "mere presence at the scene of a constitutional violation is insufficient" to establish a constitutional violation based on assaults against inmates because an "individual can be held liable pursuant to § 1983 only when there is a showing of personal participation in the alleged rights deprivation"); *Bryan v. Las Vegas Metro. Police Dept.*, 349 Fed. Appx. 132, 133, 2009 WL 3249742 (9th Cir. 2009) (holding "[o]fficers who are merely present at the time of an unlawful [conduct] cannot be held liable under § 1983" because plaintiffs did "not allege that these three officers fired shots or engaged in any other activities that might be construed as excessive force").

the door. The district court erred because Harris fails to point to any evidence establishing that Officer Boyd took any action which placed Harris at risk of any harm because Officer Boyd's mere presence cannot establish an Eighth Amendment violation. As Harris has failed to point to any evidence in the record establishing that Officer Boyd personally and subjectively knew that Harris faced an objective, intolerable, substantial risk of serious harm, much less that Officer Boyd personally took any action which could be deemed an Eighth Amendment violation, the district court erred when denying Officer Boyd's motion for summary judgment. Officer Boyd therefore did not violate the Eighth Amendment, and he is entitled to qualified immunity. Accordingly, this Court should reverse the district court's denial of Officer Boyd's motion for summary judgment, and instruct the district court to grant the motion because Officer Boyd is shielded by qualified immunity.

#### 2. Harris Cannot Establish an Eighth Amendment Violation Because the Officers Acted Reasonably

Even if Harris had not affirmed under oath that Officer Cole, ***not*** Officer Boyd, was operating the controls to Harris's cell door, Harris cannot establish that Officer Boyd actually "disregarded" a risk, required to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 837. Even if Officer Boyd had been operating the cell doors, he

"cannot be found liable under the Cruel and Unusual Punishments Clause" because he "act[ed] reasonably," even though "the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

Here, the first indication Officer Boyd had that Harris might be subject to a risk of harm was when Harris put himself in harm's way by attacking Righetti. Officers acted reasonably because, less than one second after Harris instigated an attack on Offender Righetti, and while Harris was still fully inside his cell, Harris's cell door was closed so Harris would be protected inside his cell. Video 2, TI 1:32-38; Video 5. The video establishes that Harris acted unreasonably by forcing and squeezing his way through his cell door just before his cell door was fully closed, so that he could continue his attack on Righetti. Video 2, TI 1:32-38; Video 5; 3-ER-271. Any harm Harris suffered was due to his intentional misconduct and refusal to stay in the safety of his cell, not because Officer Boyd acted unreasonably.[9] Under any authority, no one

[9] Despite Harris's unreasonable misconduct of continuing his attack on Righetti, which could have resulted in a riot that would have endangered Harris's entire unit, Officer Boyd continued to act reasonably. Officer Boyd called for reinforcements and took over the door controls so Officer Cole could grab the 40mm foam baton launcher. 3-ER-271. Officer Boyd then ensured the offenders in Unit 1 who were not part of the fight were secured back in their cells, so that these offenders would be safe from the violence instigated by Harris, thus preventing any other offenders from becoming embroiled in the fight. Videos 1 - 3, TI 1:40-3:00; 3-ER-223. Because Officer Boyd took over the

at NDOC, let alone Officer Boyd, may be deemed to have violated the Eighth Amendment for taking measures to restore order and discipline required due to Harris's intentional, violent misconduct. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (holding prison officials responded reasonably to protect an inmate when the officials offer protection, which "would have eliminated the risk of an attack," but the inmate declined, because prison officials "have done their duty" when they "offer reasonable protection from the threat"); *Walls v. Tadman*, 762 F.3d 778, 783 (8th Cir. 2014) (holding an inmate could "not demonstrated that prison officials responded unreasonably" when the inmate "declined protection when it was offered").

Harris wrongly implies that he is entitled to an inference that officers acted unreasonably because Offender Righetti supposedly made a signal for officers to open Harris's cell door (Answering Brief at 1, 5, 25, 29) and because Harris claims that he saw Officers Boyd and Cole laugh and smile at the incident (Answering Brief at 1-2, 5, 22, 25, 29,

---

door controls, Officer Cole was able to stop the fight by shooting Righetti with a high velocity foam round, which likely saved Harris's life. 3-ER-219, 224, 226, 233, 271. Due to Officer Cole and Officer Boyd's quick decisive action, the fight lasted less than 25 seconds after Harris unreasonably left the safety of his cell. Video 2, TI 1:38-2:03. As a result, medical personnel could safely enter and quickly treat the injuries Harris sustained as a result of his own misconduct. Video 4, TI 7:05 – 15:15; 3-ER-222, 225-27, 230-35.

31), or that he heard Officers Boyd and Cole cheering for Righetti (Answering Brief at 1-2, 6, 22, 25, 29, 31). The video establishes that no such signal was made. Video 2, TI 1:02-33; Video 5. To the extent that Harris argues Righetti merely looking left over his shoulder is some sort of signal (Answering Brief at 5, citing Video 2, TI 1:24-30), that argument is nothing more than wild and desperate speculation which cannot defeat a motion for summary judgment. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (holding "mere speculation" could not establish a constitutional violation); *Mackie v. Rieser*, 296 F.3d 909, 915–16 (9th Cir. 2002) (holding that "to survive summary judgment," the non-moving party "must proffer sufficient non-speculative evidence"). Even if Harris claim about the signal was not refuted by the video, the signal would have been to Officer Cole, not Officer Boyd, because Harris admitted under oath that Officer Cole was operating the door.

Moreover, due to the position of the control bubble, where Officers Boyd and Cole were stationed, and because the control bubble is enclosed by glass windows and protected by bars, which partially blocks the view into the control bubble, no jury could believe that Harris heard, saw or could distinguish anything inside the control bubble from the small, narrow window slit in his cell door. Video 4, TI 0:00 – 2:40; *see also* Video 2, TI 1:02-33; Video 5. In the fifteen (15) seconds between

when Harris's cell doors began to open and when he exited his cell, he was not even looking in the direction of the control bubble, but was looking at Offender Righetti where he was focusing his attack. Video 2, TI 1:22-38; Video 5. Because the video establishes that Harris could not heard, saw or could distinguished anything inside the control bubble, "no reasonable jury could believe" that Harris saw or heard laughing smiling or cheering, and therefore this Court need not rely on those facts for purposes of ruling on the summary judgment motion" asserting qualified immunity. *Wilkinson,* 610 F.3d at 550.

In *Cardenas-Ornelas v. Johnson*, 165 F.4th 1234, 1243 (9th Cir. 2026), this Court held that a "statement [that] was not based on personal knowledge and did not set forth the requisite facts with specificity . . . could not serve as an affidavit for purposes of summary judgment" on a qualified immunity appeal. In *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017), this Court held "there no genuine disputes of material fact" when the plaintiff "lacked personal knowledge of events" because she "was not in a position to perceive" the facts at issue. As established by the video, Harris simply was not in a position to perceive whether anyone in the control bubble was laughing smiling or cheering. Those facts therefore are not material and this Court should not rely on those facts when ruling on qualified immunity.

Even if this Court were inclined to consider such facts, laughing or cheering does not establish that officers were not reasonably attempting to protect Harris, especially when the video undisputably establishes that officers closed Harris's cell door within one second of Harris initiating his attack. *See Scroggins v. Davis*, 346 Fed. Appx. 504, 506–07, 2009 WL 3069645, at *3 (11th Cir. 2009) (holding that a factfinder reasonably could not infer a sadistic purpose from officers "cheer[ing] and g[iving] each other "high fives" because the "only reasonable inference from that conduct was that they were relieved to the point of jubilance at having gotten a tough and dangerous task"); *Mackie*, 296 F.3d at 915–16 (holding that "to survive summary judgment," the non-moving party "must proffer sufficient non-speculative evidence").

Here, Harris was offered protection behind a closed, locked cell door, but he declined the protection by forcing and squeezing through the cell door to continue his attack on Righetti, who was outside Harris's cell. Despite Harris's unreasonable misconduct, officers, including Officer Boyd, continued their attempts to protect Harris, and all other offenders from the violence Harris instigated. Harris therefore cannot establish that Officer Boyd acted unreasonable, which is required to establish an Eighth Amendment violation. As reasonable action was taken to protect Harris, which Harris intentionally and unreasonably refused, Harris cannot establish that Officer Boyd

violated the Eighth Amendment. Accordingly, the district court erred by denying Officer Boyd's motion for summary judgment because he is shielded by qualified immunity.

### D. Officer Boyd Is Entitled to Qualified Immunity Because Harris Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

In *Crawford-El v. Britton*, 523 U.S. 574, 589-92 (1998), the Supreme Court held to overcome qualified immunity, the plaintiff must "identify affirmative evidence from which a jury could find the plaintiff has carried his or her burden of proving" a "violat[ion of] clearly established law, which is an 'essentially legal question.'" In *Zorn*, the Supreme Court held that "general principles" cannot overcome Defendants entitlement to qualified immunity because such "general principles" do not "obviously resolve" and fail to "specify which circumstances" establish a constitutional violation. 146 S. Ct. at 931.

Harris ignores that factual circumstances established by the video and his own sworn statement. Harris affirmed under oath that he told Officer Cole, ***not*** Officer Boyd, that he did not want to go out to the yard. 3-ER-352, ¶ 24. Harris also affirmed he never indicated that he did not want to go out in the yard due to any danger, but because it was "not my group." 2-ER-85, ¶ 1. Harris admitted, under oath, that

Officer Cole, ***not*** officer Boyd, was operating the door controls. 3-ER-352, ¶ 24.

The video establishes that no weapon was in either Offender Righetti's left hand (Video 2, TI 1:02-33; Video 5, TI, 0:01-03), or Righetti's right hand (Video 2, TI 1:02-03, 1:38-40; Video 5, TI, 0:09-10). The video also establishes that no signal was made by Righetti to open Harris's cell door, but instead, the cell doors were being opened progressively. Video 2, TI 1:02-33; Video 5. The video also establishes that, less than one second after Harris instigated an attack on another offender, and while he was still inside his cell, Harris's cell door was closed so Harris would be protected inside his cell. Video 2, TI 1:32-38; Video 5. The video further establishes that, rather than remain inside the safety of his cell, where he would have been fully protected, Harris forced and squeezed through his cell door just before it was fully closed so that he could continue his attack that he instigated. Video 2, TI 1:32-38; Video 5. The video also establishes that, less than one second after Harris instigated an attack on another offender, and while he was still inside his cell, Harris's cell door was closed so Harris would be protected inside his cell. Video 2, TI 1:32-38; Video 5. The video further establishes that, rather than remain inside the safety of his cell, where he would have been fully protected, Harris forced and squeezed through

his cell door before it was fully closed so that he could continue his attack that he instigated. Video 2, TI 1:32-38; Video 5.

Under these established factual circumstances, Officer Boyd had no knowledge that Harris faced any risk from opening his door and did personally participate in opening Harris's door. Moreover, under these established factual circumstances, any harm Harris suffered was due to his intentional misconduct and refusal to stay in the safety of his cell, not because Officer Boyd acted unreasonably or failed to protect Harris. At most, Harris has established that Officer Boyd might have seen Offender Righetti standing outside Harris's cell, but also saw that Harris's cell door was closed in less than a second after Harris instigated his attack, which was the first sign of danger. Video 2, TI 1:03-33, Video 5.

None of the cases cited by Harris are even remotely similar.[10] *Hope v. Pelzer*, 536 U.S. 730 (2002), relied on by Harris (Answering Brief at 21-33), does not come close to "squarely govern[ing] the specific

---

[10] Harris wrongly relies on *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) and *Cortez v. Skol*, 776 F.3d 1046, 1052-53 (9th Cir. 2015) to support his clearly established law argument. *See* Answering Brief at 27, 34-35, 37-39. The Opening Brief, however, establishes that neither *Castro* (Opening Brief at 31-32), nor *Cortez* (Opening Brief at 31), may be relied upon to show a violation of clearly established law, beyond debate.

facts at issue" in this case, and does not even suggest that Officer Boyd knowingly violated the law "beyond debate."[11] *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). *Hope* did not involve a failure to protect. Instead, the inmate was "handcuffed to a hitching post" for "approximately seven hours," without water and bathroom breaks, while exposed unnecessarily to the heat of the sun. *Hope*, 536 U.S. at 733-35, 738. Hope gives no guidance on the factual circumstance of when the Eighth Amendment imposes a duty to protect.

In *Case v. Beasley*, 167 F.4th 651, 660-61 (4th Cir. 2026), (Answering Brief at 27), officers allowed safekeeper inmates, who posed a heightened risk of violence, to mix with general population inmate, even though they had been informed of the "urgency of keeping safekeepers separate from the general population." Additionally, this

---

[11] Harris implies that *Hope*'s caveat, --that "official can still be held be on notice that their conduct violates establish law even in novel factual circumstance" (536 U.S. at 741), applies in all cases. In *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018), however, the Supreme Court held this exception only applied in a "rare obvious case." *See also West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019) (holding courts "must locate a controlling case that squarely governs the specific facts at issue, except in the 'rare obvious case' in which a general legal principle makes the unlawfulness of the officer's conduct clear despite a lack of precedent addressing similar circumstances"). The facts alleged by Harris does not come close to being so egregious as to be one of those rare obvious cases, especially when Officer Boyd did not personally participate in opening Harris's door and had no actual knowledge that faced any risk from opening his cell door.

Court determined that the officers failed to act reasonably to abate the risk because "they could have simply pushed a button to close the sallyport doors" to keep the populations separated. *Id.* at 661. Here, Officer Boyd was never informed that Harris faced any risk. Reading *Case*, Officer Boyd would have understood that officers acted reasonably because they did push the button to close Harris's door, which would have provided absolute safety had Harris remained in his cell. Harris, however, put himself in harm's way by forcing his way outside of the cell after the door started closing.

In *Hearns v. Terhune*, 413 F.3d 1036, 1040-41 (9th Cir. 2005), (Answering Brief at 35-36), "prison officials knew that some of these [ruling Muslim] inmates had previously attacked [the plaintiff] or planned and implemented attacks on other Muslim inmates" and "yet did nothing to remedy this situation." Instead, despite knowing of a "series of planned attacks and religious-related violence," prison officials allowed the "ruling Muslim group" to attend chapel with other Muslim inmates unsupervised. *Id.* at 1041-42. Again, Officer Boyd was never informed that Harris faced any risk. Reading *Hearns*, Officer Boyd would have understood that officers acted reasonably because, unlike in *Hearns*, officers provided absolute safety for Harris, but Harris chose to leave the safety of his cell and continue his attack instead.

No binding precedent has held that an officer violates the Eighth Amendment when the officer is personally unaware of any animosity between two offenders, when officer is not personally involved in opening the cell door which allowed two offenders to come in contact and fight, when the plaintiff offender could have been fully protected from harm had the offender remained inside his cell, rather than force the closing cell doors and squeezing through so the plaintiff offender could continue the fight he instigated. To the contrary, *Farmer* and its progeny, as set forth above, establish that such circumstances do not violate the cruel and unusual punishment clause of the Eighth Amendment.

Harris therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Officer Boyd is shielded by qualified immunity, and the district court erred when denying Officer Boyd's motion for summary judgment. This Court should therefore reverse the district court's judgment, and remand with instructions to grant Officer Boyd's motion for summary judgment because he is shielded by qualified immunity.

### E. Despite Harris's Insinuations, Officer Boyd Did ***NOT*** Waive Any Arguments on Appeal

Harris repeatedly and wrongly insinuates that Officer Boyd Nurses waived arguments on appeal, which according to Harris were not raised before the district court. In *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022), this Court held when an Appellant's argument "is not a new claim but is, instead, a new argument in support of their consistent claim" then "Appellants can make any argument in support of their claim on appeal" because "they are "not limited to the precise arguments they made below." "As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments." *Id.*; *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330 (2010) (same).

Officer Boyd's argument that Harris failed to establish all the elements necessary to prove that Officer Boyd violated the Eighth Amendment is not a new claim. In his motion for summary judgment Officer Boyd set forth all of the required elements necessary to establish an Eighth Amendment failure to protect claims, and including that an "official is not liable under the Eighth Amendment unless she knows of and disregards an excessive risk to inmate health or safety" (3-ER-205-06), and concluded "Harris absolutely fails to meet th[is] subjective standard" (3-ER-207). Even if Officer Boyd had made new argument concerning deliberate indifference or personal participation those

arguments would not be waived or forfeited as only claims are deemed waived or forfeited, and not arguments. Officer Boyd's consistent, albeit more precise, argument establishing that he lacked any the required personal knowledge and participation, therefore have not been waived or forfeited.[12]

Even if the waiver or forfeiture rule were applicable, in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010), this Court explained "waiver is a discretionary, not jurisdictional, determination." The Court held such discretion will be exercised "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* Because this is an appeal of a motion for summary

---

[12] *See Medical Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 729 n.10 (6th Cir. 2019) (holding defendants did not waive or forfeit new argument that plaintiff failed to establish claim because parties "are not limited to the precise arguments they made below"); *Bartley v. Kim's Enter. of Orlando, Inc.*, Case No. 13–13507, 568 Fed. Appx. 827, 836 n.6 (11th Cir. 2014) (holding defendant did not waive precise argument "detain the plaintiffs to ensure officer and public safety" because defendant made "the broader claim that the challenged detention was lawful" as "parties are not limited to the precise arguments they made below"); *In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154, 161 n.3 (2d Cir. 2012) (holding argument which is "additional support for Defendants' position" should not be disregarded on appeal because "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim" as "parties are not limited to the precise arguments they made below").

judgment, no additional factual record need be developed and the issues to be decided are purely ones of law. As Officer Boyd is entitled to qualified immunity as a matter of law (*Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023), to the extent forfeiture or waiver is implicated, this Court should exercise its discretion to reject any argument concerning forfeiture.

## III. CONCLUSION

For the reasons set forth above, this Court should reverse the district court's judgment denying Officer Boyd's motion for summary judgment, and remand with instruction to grant the motion in all respects.

Respectfully submitted November 20, 2026,

AARON D. FORD
Attorney General

By: *_/s/ Chris Davis_*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendant-Appellant*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 6322 words.

Respectfully submitted November 20, 2026,

AARON D. FORD
Attorney General

By: /s/ *Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT-APPELLANT'S REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic system on November 20, 2026.

Participants in the case who are registered users will be served by the appellate electronic filing system, or by email, to:

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, D.C. 20001-05069
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellee*

*/s/ Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General